**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PHILIP FRYMAN, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| ATLAS FINANCIAL HOLDINGS, INC., SCOTT D. WOLLNEY, and PAUL A. ROMANO, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Philip Fryman ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Atlas Financial Holdings, Inc. ("Atlas Financial" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Atlas Financial; and (c) review of other publicly available information concerning Atlas Financial.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Atlas Financial's securities between March 13, 2017, and March 2, 2018, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Atlas Financial purportedly provides specialty commercial transportation insurance for taxi, limousine, paratransit and other transport businesses around the United States.

3.      On March 1, 2018, the Company announced a large increase to its reserves, Atlas Financial reported in relevant part:

> Atlas performed a comprehensive review of its reserves and based on year-end actuarial work coupled with a detailed internal file audit for claims with reserves not established by the Company's predictive analytics tools, overall reserves were strengthened.

> **Facts Surrounding Reserve Changes**

> • Atlas previously identified that claim expenses in Michigan were significantly outpacing other states and took a significant charge. Although exposure in Michigan was reduced to approximately 1% of the Company's business by year end 2017, payments for claims in this state continued to be disproportionate to historic premiums earned.

> • In addition, remaining liability for non-New York Global Liberty business written prior to 2016 is expected to settle for greater amounts than previously expected.

---

[1] "Defendants" refers to Atlas Financial, Scott D. Wollney, and Paul A. Romano collectively.

• Overall remaining actuarially determined liability for remaining claims related to accident year 2015 and prior in general was indicated to be significantly higher than carried reserves.

• Risk selection and pricing precision supported by modelling in underwriting beginning in 2015 appears to have contributed improvement in expected loss ratio for premiums earned in 2016 and 2017.

• Payment activity in calendar year 2017 attributed to the use of predictive modelling in claims was accelerated as expected. The Company believes that this represents an ultimate reduction in future expected losses, but it appears to be too early for credit to be given to this potential outcome from an actuarial perspective.

• While the Company did see positive trends relating to more recent accident years in which predictive modelling had an impact, based on year-end work, it is clear that the challenges from the past outpaced more recent benefits.

• Based on year end 2017 actuarial work Atlas determined that this significant reserve increase is necessary to ensure sufficient IBNR levels to extinguish the remaining claims especially for older accident years.

Scott D. Wollney, Chief Executive Officer stated, "While we are disappointed that book value was reduced by reserve strengthening related to prior periods, we are reassured that results for more recent accident years are coming in as expected. The significant commitment we've made to analytics and technology are amplifying the expertise, data and heritage we've always identified as valuable assets of our insurance subsidiaries. The majority of our case reserves are now based on predictive modeling, and thus far this model has proved to be working, helping us to bring claims to ultimate faster and with greater accuracy. We believe the file by file review conducted by our experienced team will also serve as a reliable benchmark against which future payments for older claims can be measured. Going forward, we plan to share quarterly actual loss development experience for both the audited claim files for older accident years as well as paid to case reserve outcomes for predictive model based case reserves."

4.      On this news, the Company's stock price fell $7.70 per share, over 40%, to close at $11.10 per share on March 2, 2018, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company failed to employ internal controls to ensure appropriate accounting practices, including, but not limited to, the calculation of certain loss reserves; (2) that, as a result, the Company's internal

controls over financial reporting were materially weak; (3) that as a result the Company's financial statements were inaccurate and misleading, including by understating certain loss reserves; and, (4) that, as a result of the foregoing, Defendants' statements about Atlas Financial's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Philip Fryman, as set forth in the accompanying certification, incorporated by reference herein, purchased Atlas Financial securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Atlas Financial is incorporated in the Cayman Islands and the Company's corporate headquarters are located in Schaumburg, Illinois.   Atlas Financial's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "AFH."

13.     Defendant Scott D. Wollney ("Wollney") was the Chief Executive officer ("CEO") of Atlas Financial at all relevant times.

14.     Defendant Paul A. Romano ("Romano") was the Chief Financial officer ("CFO") of Atlas Financial at all relevant times.

15.     Defendants Wollney and Romano, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Atlas Financial's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Atlas Financial purportedly provides specialty commercial transportation insurance for taxi, limousine, paratransit and other transport businesses around the United States.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on March 13, 2017. On that day the Company filed its annual report on Form 10-K for the period ended December 31, 2016.  The Company noted Claims Liabilities of $139,004,000 for the period ended December 31, 2016. The Company

stated that based on an evaluation of internal controls over financial reporting, "the Company's internal control over financial reporting is effective as of December 31, 2016." The Company stated in relevant part:

### Management's Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rule 13a-15(f). Under the supervision and with the participation of our management, including our chief executive officer and chief financial officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in *Internal Control - Integrated Framework* issued in 2013 by the Committee of Sponsoring Organizations of the Treadway Commission. Based on such evaluation, we have concluded that the Company's internal control over financial reporting is effective as of December 31, 2016.

Our management does not expect that the Company's controls and procedures over financial reporting will prevent all errors and frauds. A control system, no matter how well designed and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, a control system's design must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within the Company have been detected. These inherent limitations include the realities that judgments in decision-making can be faulty and that breakdowns can occur because of simple mistake or error.

Additionally, controls can be circumvented by the individual acts of some persons, by collusion of two or more people, or by management override of control. The design of any system of controls also is based, in part, upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will successfully achieve its stated goals under all potential future conditions; over time, controls may become inadequate because of changes in conditions, or the degree of compliance with the policies or procedures may deteriorate. Because of the inherent limitations in a cost-effective control system, misstatements due to error or fraud may occur and not be detected.

***

**Claims Liabilities**

The table below shows the amounts of total case reserves and IBNR reserves as of December 31, 2016 and as of December 31, 2015. The provision for unpaid claims and claims adjustment expenses increased by 9.4% to $139.0 million as of December 31, 2016 compared to $127.0 million as of December 31, 2015. During the year ended December 31, 2016, case reserves increased by 5.4% compared to

December 31, 2015, while IBNR reserves increased by 12.0%. The increase in case reserves resulted from management's review of outstanding unpaid personal injury protection claims, particularly in the state of Michigan. The increase in IBNR related primarily to premium growth and updates in the estimated costs on outstanding unpaid claims.

| Provision for Unpaid Claims by Type - Gross of Reinsurance ($ in '000s) | | | |
|---|---|---|---|
| As of December 31, | 2016 | 2015 | YTD% Change |
| Case reserves | $ 52,132 | $ 49,441 | 5.4% |
| IBNR | 86,872 | 77,570 | 12.0% |
| Total | $ 139,004 | $127,011 | 9.4% |
| Provision for Unpaid Claims by Line of Business – Gross of Reinsurance ($ in '000s) | | | |
| As of December 31, | 2016 | 2015 | YTD% Change |
| Commercial automobile liability | $ 132,732 | $115,950 | 14.5% |
| Other | 6,272 | 11,061 | (43.3)% |
| Total | $ 139,004 | $127,011 | 9.4% |

18.     On March 13, 2017, the Company issued a press release entitled "Atlas Financial Holdings Announces 2016 Fourth Quarter Financial Results."   Therein, the Company commented further on its financial performance, including pointing out Atlas Financial's loss reserves relating to various underwriting businesses. The Company stated in relevant part:

**Fourth Quarter 2016 Financial Performance Summary (comparisons to Fourth Quarter 2015 unless noted):**

• Gross premium written decreased by 0.8% to $52.0 million
• In-force premium at December 31, 2016 increased 6.6% to $224.6 million compared to $210.6 million
• Total revenue for the three months ended December 31, 2016 increased by 7.1% to $46.3 million
• The combined ratio for the fourth quarter of 2016 was increased by 68.3 percentage points to 156.5%, primarily as a result of a 72.9% impact from previously announced claims reserves strengthening related to prior accident years
• Underwriting loss for the fourth quarter of 2016 was $25.0 million, compared to underwriting income of $4.9 million, primarily due to claims reserve strengthening related to prior accident years
• Net loss for the fourth quarter of 2016 was $13.6 million, or $1.13 loss per common share diluted, compared to net income of $4.3 million, or $0.34 earnings per common share diluted
• Book value per common share on December 31, 2016 was $10.54, compared to $10.15 at December 31, 2015

• Annualized return on equity ("ROE") was a negative 39.6% in the fourth quarter 2016 compared to a positive 13.6% in the prior year period

**Full Year 2016 Financial Performance Summary (comparisons to Full Year 2015 unless noted):**

• Gross premium written increased by 7.6% to $225.1 million, which included an increase of 7.7% in core
commercial auto business
• In-force premium as of December 31, 2016 was $224.6 million, compared to $210.6 million as of December 31,
2015
• The combined ratio increased by 14.7 percentage points to 102.9%, primarily as a result of a 19.1% impact from previously announced claims reserve strengthening related to prior accident years
• There was an underwriting loss of $5.0 million, compared to underwriting income of $18.0 million, primarily due to claims reserve strengthening related to prior accident years
• Net income was $2.6 million, or $0.19 per common share diluted, compared to $14.4 million, or $1.13 per common share diluted, representing a decrease of 83.2% or $0.94, of which $$1.43 loss per common share diluted related to reserve strengthening for older accident years
• Book value per common share as of December 31, 2016 was $10.54, compared to $10.15 as of December 31,
2015
• Return on equity was 2.1% as compared to 12.1%

**Chicago, Illinois (March 13, 2017) - Atlas Financial Holdings, Inc. (NASDAQ: AFH) ("Atlas" or the "Company")** today reported its financial results for the fourth quarter ended December 31, 2016.

**Management Comments**
Scott D. Wollney, Atlas' President and CEO, stated, "2016 was a year in which Atlas continued to leverage its expertise as a specialty niche insurance business to overcome a number of unique circumstances that impacted the Company and its markets, and we feel properly positioned us for strong underwriting performance in 2017. We have begun to see a favorable turn in our traditional taxi business, with premium reductions that occurred in the middle of the year beginning to abate; and, thus far in 2017 we are seeing early indications that this reversal of headwinds facing our growth last year may not have a substantial impact this year. In addition, our limo and paratransit markets have also both seen meaningful growth. Overall, we continue to see favorable competitive and pricing environments in most of our geographic markets. These are good indicators that positive pricing dynamics are continuing and we
remain committed to our core goal of maximizing underwriting profit driven return on deployed capital, book value appreciation, and return-on-equity at levels 500 to 1,000 bps above our industry."

Mr. Wollney continued, "As outlined in our preliminary announcement, we identified a level of loss development in Michigan that led to an increase in reserves at the end of 2016 for older accident years. This impacted our financial performance for the quarter and the year, but we are confident that the proactive actions we took to address this exposure were appropriate and sufficient to position Atlas for future profitability at our expected levels in the coming year and beyond. The Company anticipates business in Michigan to be less than 1% of Atlas' in-force business by the end of 2017 based on incremental actuarially supported pricing actions. Despite this negative impact, the Company's book value at December 31, 2016 was higher than the previous year at $10.54, and we remain committed to producing favorable ROE throughout multiple cycles. We take responsibility for the challenges faced in 2016, will learn from them and are very confident about the positive expectations we have going forward."

19.     On May 8, 2017 the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2017.  The Company noted Claims Liabilities of $127,971 for the period ended March 31, 2017. The Company stated that based on an evaluation of internal controls over financial reporting, "[t]here were no changes to our internal control over financial reporting during the fiscal quarter ended March 31, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

20.     On May 8, 2017, the Company issued a press release entitled "Atlas Financial Holdings Announces 2017 First Quarter Financial Results."  Therein, the Company commented further on its financial performance, including pointing out Atlas Financial's loss reserves relating to various underwriting businesses. The Company stated in relevant part:

First Quarter 2017 Financial Performance Summary (comparisons to First Quarter 2016 unless noted):
• Gross premium written increased by 53.8% to $98.5 million
• In-force premium as of March 31, 2017 increased 16.0% to $255.8 million compared to $220.6 million
• Total revenue for the three month period ended March 31, 2017 increased by 16.5% to $49.8 million
• Underwriting income for the first quarter 2017 was $6.3 million compared to $6.5 million; underwriting income for the three month period ended March 31, 2016 included a $402,000 recovery of expenses pursuant to the contingent adjustments of the Gateway stock purchase agreement, without which underwriting income would have been $6.1 million.
• The combined ratio for the first quarter 2017 was 86.9% compared to 84.4%; adjusting for the Gateway stock purchase agreement related benefit first quarter 2016 combined ratio would have been 85.4%
• Net income for the first quarter 2017 was $4.9 million, or $0.40 per common

share diluted, compared to

$4.8 million, or $0.38 per common share diluted, representing a $0.02 or 5.3% increase from first quarter 2016
• Book value per common share on March 31, 2017 was $10.99, compared to $10.54 as of December 31, 2016 and $10.73 as of March 31, 2016
• Annualized return on equity ("ROE") was 14.9% in the first quarter 2017 compared to 14.5% in the prior year period.

***

Mr. Wollney concluded, "We continue to closely monitor loss development in all areas of our book of business and have a high degree of confidence in our results. Michigan policies currently represent less than 2% of our written premium for the first quarter and based on incremental pricing actions, we continue to anticipate less than 1% of our written premium being in the state in 2017. Further, we continued to utilize targeted analytics coupled with our best in class claim handling procedures that are specifically designed for our specialty niche, which we feel will lead to better and less volatile loss ratios over time. We also believe that our heritage, deep repository of data, expertise and use of analytics and telematics coupled with our hyper-focused industry commitment will provide a decided competitive advantage allowing Atlas to grow while properly pricing its products at levels that will generate above average returns on deployed capital across a wide geographic base. We are proud of our team for successfully navigating the changing conditions observed across the public auto market recently. Over the last few weeks the Company also announced a share-buyback plan and completed a debt financing of $25.0 million. Some of these funds were used to replace the variable rate credit facility that had been in place and was subsequently terminated. Remaining funds are expected to be utilized in connection with potential stock buy backs and future growth. We are committed to always being a good steward of capital and have properly positioned Atlas with multiple financial levers to access ensuring that we are well-positioned for 2017 based on current market conditions."

21.     On August 7, 2017 the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2017. The Company noted Claims Liabilities of $118,989 for the period ended June 30, 2017. The Company stated that based on an evaluation of internal controls over financial reporting, "[t]here were no changes to our internal control over financial reporting during the fiscal quarter ended June 30, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

22.     On August 7, 2017, the Company issued a press release entitled "Atlas Financial Holdings Announces 2017 Second Quarter Financial Results." Therein, the Company commented further on its financial performance, including pointing out Atlas Financial's loss

reserves relating to various underwriting businesses. The Company stated in relevant part:

• Total revenue for the three month period ended June 30, 2017 increased by 28.9% to $55.7 million

• Gross premium written increased by 18.6% to $57.4 million

• In-force premium as of June 30, 2017 increased 20.4% to $264.6 million compared to $219.8 million

• Underwriting income for the second quarter 2017 was $7.5 million compared to $6.4 million

• The combined ratio for the second quarter 2017 was 86.2% compared to 84.8%

• Net income for the second quarter 2017 was $5.5 million, or $0.45 per common share diluted, compared to $4.9 million, or $0.38 per common share diluted, representing a $0.07 or 18.4% increase from second quarter 2016

• Book value per common share on June 30, 2017 was $11.50, compared to $10.54 as of December 31, 2016 and $11.27 as of June 30, 2016

• Annualized return on equity ("ROE") was 16.2% in the second quarter 2017 compared to 14.0% in the prior year period

The Company recorded record revenue for the 2017 third quarter of $84.6 million, a $20.2 million or 31% increase over 2016 third quarter revenue of $64.4 million. Revenue for the nine months ended September 30, 2017 was $233.6 million, a $58.5 million or 33% increase over revenue for the nine months ended September 30, 2016 of $175.1 million.

Mr. Wollney concluded, "Over the second half of 2017, Atlas' principal focus is to continue the integration of technology and analytics to optimize the ecosystem including our organization, distribution partners, and insureds. Given that our target market is a higher-frequency line of business, we expect the incremental benefit from predictive analytics and telematics related initiatives underway to be particularly impactful for Atlas. Based on our continuing efforts to create awareness, coupled with the improving capability and reduced cost of emerging in-vehicle and other technologies, there is an increased opportunity to measure and improve the driving habits of properly licensed drivers that fit our underwriting criteria. When coupled with our deep repository of data and experience, we expect to see lesser volatility in loss ratios over time while simultaneously identifying potential areas or markets where loss experience is changing more quickly than was historically possible. This is allowing Atlas to grow in the right markets without sacrificing our disciplined commitment to better-than-industry bottom line results. During the second quarter we reported an annualized ROE in the high teens (16.2% annualized) and feel well positioned to improve based on the current market environment."

23.     On November 7, 2017 the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2017.  The Company noted Claims Liabilities of $114,503 for the period ended September 30, 2017. The Company stated that based on an evaluation of internal controls over financial reporting, "[t]here were no changes to our internal control over financial reporting during the fiscal quarter ended September 30, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

24.     On November 6, 2017, the Company issued a press release entitled "Atlas Financial Holdings Announces 2017 Third Quarter Financial Results."  Therein, the Company commented further on its financial performance stating in relevant part:

• Total revenue for the three month period ended September 30, 2017 increased by 26.8% to $57.5 million

• Gross premium written increased by 8.5% to $65.9 million

• In-force premium as of September 30, 2017 increased 20.8% to $266.3 million compared to $220.4 million

• Underwriting income for the third quarter 2017 was $6.8 million compared to $7.1 million for the third quarter 2016 which included $1.9 million benefit from expenses recovered related to acquisitions and stock purchase agreements

• The combined ratio for the third quarter 2017 was 87.9% compared to 83.5%

• Net income for the third quarter 2017 was $5.1 million, or $0.42 per common share diluted, compared to $6.5 million, or $0.51 per common share diluted, representing a $0.09 or 17.7% decrease from third quarter 2016

• Book value per common share on September 30, 2017 was $11.96, compared to $10.54 as of December 31, 2016 and $11.81 as of September 30, 2016

• Annualized return on equity ("ROE") was 14.5% in the third quarter 2017 compared to 17.9% in the prior year period

25.     The above statements identified in ¶¶17-24 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: 1) that the Company failed

to employ internal controls to ensure appropriate accounting practices, including, but not limited to, the calculation of certain loss reserves; (2) that, as a result, the Company's internal controls over financial reporting were materially weak; (3) that as a result the Company's financial statements were inaccurate and misleading, including by understating certain loss reserves; and, (4) that, as a result of the foregoing, Defendants' statements about Atlas Financial's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## The Truth is Revealed

26.     On March 1, 2018, after market close, the Company announced a large increase to its reserves, Atlas Financial reported in relevant part:

> Atlas performed a comprehensive review of its reserves and based on year-end actuarial work coupled with a detailed internal file audit for claims with reserves not established by the Company's predictive analytics tools, overall reserves were strengthened.

> **Facts Surrounding Reserve Changes**

> • Atlas previously identified that claim expenses in Michigan were significantly outpacing other states and took a significant charge. Although exposure in Michigan was reduced to approximately 1% of the Company's business by year end 2017, payments for claims in this state continued to be disproportionate to historic premiums earned.

> • In addition, remaining liability for non-New York Global Liberty business written prior to 2016 is expected to settle for greater amounts than previously expected.

> • Overall remaining actuarially determined liability for remaining claims related to accident year 2015 and prior in general was indicated to be significantly higher than carried reserves.

> • Risk selection and pricing precision supported by modelling in underwriting beginning in 2015 appears to have contributed improvement in expected loss ratio for premiums earned in 2016 and 2017.

> • Payment activity in calendar year 2017 attributed to the use of predictive modelling in claims was accelerated as expected. The Company believes that this represents an ultimate reduction in future expected losses, but it appears to be too early for credit to be given to this potential outcome from an actuarial perspective.

> • While the Company did see positive trends relating to more recent accident years in which predictive modelling had an impact, based on year-end work, it is

clear that the challenges from the past outpaced more recent benefits.

• Based on year end 2017 actuarial work Atlas determined that this significant reserve increase is necessary to ensure sufficient IBNR levels to extinguish the remaining claims especially for older accident years.

Scott D. Wollney, Chief Executive Officer stated, "While we are disappointed that book value was reduced by reserve strengthening related to prior periods, we are reassured that results for more recent accident years are coming in as expected. The significant commitment we've made to analytics and technology are amplifying the expertise, data and heritage we've always identified as valuable assets of our insurance subsidiaries. The majority of our case reserves are now based on predictive modeling, and thus far this model has proved to be working, helping us to bring claims to ultimate faster and with greater accuracy. We believe the file by file review conducted by our experienced team will also serve as a reliable benchmark against which future payments for older claims can be measured. Going forward, we plan to share quarterly actual loss development experience for both the audited claim files for older accident years as well as paid to case reserve outcomes for predictive model based case reserves."

27.     Then, on March 2, 2018, the Company filed an 8-K with the SEC disclosing the above-mentioned increase to its loss reserve; and Boenning & Scattergood, Inc. analyst Robert Farnam downgraded the Company's shares to neutral. In addition, Bloomberg news noted that the Company's risk of default had increased in an article entitled "Atlas Financial Debt Risk Rises 9 Levels."

28.     On this news, the Company's stock price fell $7.70 per share, over 40%, to close at $11.10 per share on March 2, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Atlas Financial's securities between March 13, 2017, and March 2, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is

impracticable.  Throughout the Class Period, Atlas Financial's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Atlas Financial shares were traded publicly during the Class Period on the NASDAQ.  As of November 3, 2017, Atlas Financial had 12,030,703 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Atlas Financial or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Atlas Financial; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35. The market for Atlas Financial's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Atlas Financial's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Atlas Financial's securities relying upon the integrity of the market price of the Company's securities and market information relating to Atlas Financial, and have been damaged thereby.

36. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Atlas Financial's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Atlas Financial's business, operations, and prospects as alleged herein.

37. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Atlas Financial's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.    During the Class Period, Plaintiff and the Class purchased Atlas Financial's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Atlas Financial, their control over, and/or receipt and/or modification of Atlas Financial's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Atlas Financial, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.    The market for Atlas Financial's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Atlas Financial's securities traded at artificially inflated prices during the Class Period.  On January 5, 2018, the Company's stock price closed at a Class Period high of $21.35 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Atlas Financial's

securities and market information relating to Atlas Financial, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Atlas Financial's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Atlas Financial's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Atlas Financial and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Atlas Financial's securities was an efficient market for the following reasons, among others:

(a)     Atlas Financial stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Atlas Financial filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Atlas Financial regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Atlas Financial was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Atlas Financial's securities promptly digested current information regarding Atlas Financial from all publicly available sources and reflected such information in Atlas Financial's stock price. Under these circumstances, all purchasers of Atlas Financial's securities during the Class Period suffered similar injury through their purchase of Atlas Financial's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Atlas Financial who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Atlas Financial's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Atlas Financial's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Atlas Financial's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Atlas Financial's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Atlas Financial and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Atlas Financial's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless

in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Atlas Financial's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Atlas Financial's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Atlas Financial was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Atlas Financial securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
#### Violation of Section 20(a) of The Exchange Act
#### Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of Atlas Financial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Atlas Financial and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  March 5, 2018                    Respectfully submitted,


                                         */s/ Peter E. Cooper*

**LAWRENCE, KAMIN, SAUNDERS & UHLENHOP LLC**
Mitchell B. Goldberg
Peter E. Cooper
Marielise Fraioli
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Telephone:  (312) 372-1947
Email: mgoldberg@lksu.com
        pcooper@lksu.com
        mfraioli@lksu.com


**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*