**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PHILIP FRYMAN, *et al.*, | Case No. 1:18-cv-01640 |
| Plaintiffs, | Hon. Franklin U. Valderrama<br>United States District Judge |
| v. | |
| ATLAS FINANCIAL HOLDINGS, INC.,<br>SCOTT D. WOLLNEY, and PAUL A.<br>ROMANO, | Hon. Sheila M. Finnegan<br>United States Magistrate Judge |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II)**
**CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF**
<u>**NOTICE OF SETTLEMENT**</u>

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     NATURE OF THE ACTION ............................................................................. 2

III.    PROCEDURAL HISTORY................................................................................ 2

      a.     The Initial Complaint And Lead Plaintiff Appointment........................................ 2

      b.     Lead Counsel's Investigation, First, Second, And Third Amended Complaints And Defendants' Motion To Dismiss The Third Amended Complaint ......................... 3

      c.     The Operative Complaint And Defendants' Motion To Dismiss ........................... 4

      d.     Discovery ...................................................................................... 5

      e.     Mediation ...................................................................................... 5

IV.    THE SETTLEMENT ........................................................................................ 6

      a.     The Settlement Terms ...................................................................... 6

      b.     The Plan Of Allocation ..................................................................... 6

V.      THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 6

      a.     Plaintiffs And Their Counsel Adequately Represented The Settlement Class ....... 8

      b.     The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel ....................................................................................... 9

      c.     The Relief Provided For The Settlement Class Is Adequate ............................... 10

            i.      The Settlement Amount .......................................................... 10

            ii.     The Cost, Risk, And Delay of Trial And Appeal...................................... 12

            iii.    Other Factors Established By Rule 23(e)(2)(C) Support Preliminary Approval ....................................................................................... 13

      d.     All Settlement Class Members Are Treated Equitably.......................................... 15

      e.     The Remaining Factors Are Satisfied ...................................................... 16

        i.      The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved Supports Preliminary Approval ..... 16

        ii.     Recommendations Of Experienced Counsel ............................................ 17

VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 17

VII.   THE PROPOSED NOTICE SHOULD BE APPROVED ................................................ 19

     a.     The Method Of Notice Is Adequate ...................................................... 19

     b.     The Content Of The Notice Is Adequate ............................................... 20

VIII.  PROPOSED SETTLEMENT SCHEDULE ..................................................................... 21

IX.    CONCLUSION ............................................................................................................... 22

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................... 19

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013).............................................................................. 18, 19

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................... 12

*Armstrong v. Bd. of School Directors of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) .......................................................................... 7

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............................................... 18

*Dura Pharms., Inc., v. Broudo*,
  544 U.S. 336 (2005)......................................................................................... 11

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir.1982) .......................................................................... 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................................................... 13

*Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ........................................................... 11, 15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)................................................. 14

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................ 16

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................. 15

*In re Enron Corp. Sec. & ERISA Litig.*,
  2003 WL 22494413 (S.D. Tex. July 24, 2003)............................................. 20

*In re Groupon, Inc. Sec. Litig.*,
  2016 WL 3896839 (N.D. Ill. July 13, 2016).................................................. 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................ 12

*In re Merck & Co. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005).................................................................. 19

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................. 12, 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................ 9

*In re Northfield Labs., Inc. Sec. Litig.*,
    2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ......................................... 9, 20

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 12

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................. 9

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .............................................................. 7, 8

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ............................................................... 17

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................. 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    256 F.R.D. 586 (N.D. Ill. 2009) ........................................................... 18

*McCue v. MB Fin., Inc.*,
    2015 WL 1020348 (N.D. Ill. Mar. 6, 2015)............................................ 10

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ....................................................... 14

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)................................................................. 18

*Roth v. Aon Corp.*,
    238 F.R.D. 603 (N.D. Ill. 2006) ...................................................... 18, 19

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................... 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 2570050 (N.D. Ind. May 21, 2020) ................................................. 17, 21

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019)............................................................. 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................................... 8

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ........................................................ 17

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ........................................................................ 13

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir, 2014) ............................................................................ 15, 17

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)......................................................... 10

## STATUTES

15 U.S.C. § 78u-4(a)(4) .................................................................................................. 15

15 U.S.C. § 78u-4(a)(7) .................................................................................................. 21

15 U.S.C. § 78u-4(b)(3)(B).............................................................................................. 5

## RULES

Fed. R. Civ. P. 23................................................................................................... *passim*

Court-appointed Lead Plaintiffs Philip Fryman and Aram Hovasapyan ("Lead Plaintiffs") and additional named Plaintiff Chuan Ji (collectively "Plaintiffs")[1], on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation; (ii) certification of the proposed Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the proposed Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved an excellent resolution of this Action. The proposed Settlement will resolve all claims against Defendants[3] in exchange for a non-reversionary cash payment of $5,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 7.6% of the total *maximum* damages potentially available in this Action, which is well above the 1.8% median recovery in securities class action settlements.

By the time the Settlement was reached, Plaintiffs and Lead Counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Indeed, as described in detail in the procedural history section below, prior to reaching the Settlement, Lead Counsel: conducted an extensive investigation into Atlas's allegedly wrongful acts; drafted four

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated November 28, 2022 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Kara M. Wolke ("Wolke Decl."), filed concurrently herewith. As part of the Settlement, the Parties have agreed to add Chuan Ji as a named Plaintiff to the Action. *See* Stipulation, p.1.

[2] Subject to certain exclusions, the "Settlement Class" is defined as all persons and entities that during the period from February 22, 2017, through April 30, 2019, inclusive, purchased or otherwise acquired Atlas Common Stock, and/or Atlas Notes, and/or Atlas Call Options, and/or wrote Atlas Put Options, and were damaged thereby. *See* Stipulation, ¶ 1(uu).

[3] Defendants are Atlas Financial Holdings, Inc. ("Atlas" or the "Company"), Paul A. Romano, and Scott D. Wollney.

comprehensive amended complaints based on this investigation; engaged in substantial briefing opposing multiple rounds of motions to dismiss, including one round of briefing that resulted in the Court denying Defendants' motion to dismiss except with respect to any misstatement claims which alleged that post-Class Period statements were false or materially misleading; drafted and exchanged initial disclosures; negotiated a confidentiality order and protocol to govern the production of electronically stored information and other documents; drafted and served requests for production on Defendants and reviewed more than 320,000 pages of documents produced by Defendants; and engaged in extensive mediation efforts with an experienced neutral.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with a well-respected mediator. As discussed in greater detail below, Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.

## II. NATURE OF THE ACTION

Plaintiffs asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Specifically, Plaintiffs alleged that Defendants violated the federal securities laws by making materially false and misleading statements about Atlas's loss reserves. Plaintiffs further alleged that, as a result of these alleged misrepresentations, the prices of Atlas's Securities were artificially inflated, and that Plaintiffs suffered damages when the truth was disclosed. Defendants denied, and continue to deny, Plaintiffs' allegations.

## III. PROCEDURAL HISTORY

### a. The Initial Complaint And Lead Plaintiff Appointment

This Action commenced on March 5, 2018. ECF. No. 1. By Order dated May 15, 2018, the Court appointed Philip Fryman and Aram Hovasapyan as Lead Plaintiffs, and approved their selection of Glancy Prongay & Murray LLP as Lead Counsel and Lawrence Kamin, LLC as

Liaison Counsel.  ECF No. 30.

**b. Lead Counsel's Investigation, First, Second, And Third Amended Complaints And Defendants' Motion To Dismiss The Third Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Atlas's allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Atlas's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning the Company, (c) Atlas's investor call transcripts, and (d) other publicly available material related to Defendants; and (2) retaining and working with private investigators who conducted numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with accounting, loss causation and damages experts.

On July 30, 2018, Lead Plaintiffs filed and served their Amended Class Action Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint") asserting claims against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Among other things, the First Amended Complaint alleged that Defendants made materially false and misleading statements about Atlas's loss reserves.  The First Amended Complaint further alleged that the prices of Atlas's securities were artificially inflated as a result of Defendants' allegedly false and misleading statements and declined when the truth was revealed.  ECF No. 35.

On September 28, 2018, Defendants moved to dismiss the First Amended Complaint.  ECF Nos. 40-42.  On November 12, 2018, Lead Plaintiffs filed and served their opposition to Defendants' motion to dismiss.  ECF No. 43.  On December 12, 2018, Defendants filed and served their reply.  ECF No. 44.  On April 1, 2019, Lead Plaintiffs filed and served their unopposed motion for leave to file a second amended complaint.  ECF No. 45.

On April 9, 2019, the Court entered an Order granting Lead Plaintiffs' motion for leave to file a second amended complaint (ECF No. 47) and on that same day, Lead Plaintiffs filed and served their Second Amended Class Action Complaint for Violations of the Federal Securities

Laws (the "Second Amended Complaint"), asserting claims under the Exchange Act against Defendants based upon allegations similar to those in the First Amended Complaint, but also included allegations relating to additional loss reserve insufficiencies subsequent to those alleged in the First Amended Complaint.  ECF No. 48.

On June 4, 2019, Lead Plaintiffs filed and served their unopposed motion for leave to file a third amended complaint.  ECF No. 57.  On June 11, 2019, the Court entered an Order granting Lead Plaintiffs' motion for leave to file a third amended complaint (ECF No. 59) and on that same day, Lead Plaintiffs filed and served their Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Third Amended Complaint"), asserting claims under the Exchange Act against Defendants based upon allegations similar to those in the First and Second Amended Complaints, but also included allegations relating to, *inter alia*, Atlas's dismissal of its independent public accountant due to a disagreement about Atlas's reserves subsequent to the filing of the Second Amended Complaint.  ECF No. 61.

On July 17, 2019, Defendants moved to dismiss the Third Amended Complaint.  ECF Nos. 63-65.  On August 30, 2019, Lead Plaintiffs filed and served their opposition to Defendants' motion to dismiss.  ECF Nos. 67-68.  On October 1, 2019, Defendants filed and served their reply. ECF Nos. 72-74.  On May 26, 2020, the Court entered an Order granting Defendants' motion to dismiss the Third Amended Complaint without prejudice.  ECF No. 92.

### c.  The Operative Complaint And Defendants' Motion To Dismiss

On June 30, 2020, Lead Plaintiffs filed and served their Fourth Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims under the Exchange Act against Defendants based upon allegations similar to those in the First, Second, and Third Amended Complaints, but also included allegations relating to, *inter alia*, regulatory investigations and orders by the State of Missouri Department of Insurance, Financial Institutions and Professional Registration, the New York Department of Financial Services and the Illinois Department of Insurance regarding Atlas's loss reserves and reserving methodology.  ECF No. 97.

On August 17, 2020, Defendants moved to dismiss the Complaint.  ECF Nos. 99-101.

Following additional briefing by the Parties (ECF Nos. 105-06), on April 18, 2022, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss the Fourth Amended Complaint (the "MTD Order"). ECF No. 118.

On April 25, 2022, Defendants moved for clarification of the MTD Order's rulings on loss causation and standing. ECF No. 125. On April 27, 2022, the Court denied Defendants' motion for clarification of the MTD Order. ECF No. 126. Defendants answered the Complaint on May 9, 2022. ECF No. 127.

### d. **Discovery**

As a result of the denial of the motion to dismiss, the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was lifted. *See* 15 U.S.C. § 78u-4(b)(3)(B). Thereafter, the Parties exchanged initial disclosures, served requests for production of documents, Lead Plaintiffs served two subpoenas for documents on third parties, and the Parties negotiated an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents in the Action. The Parties served responses and objections to each other's initial requests for production of documents on July 15, 2022, and Defendants subsequently produced more than 320,000 pages of documents to Lead Plaintiffs.

### e. **Mediation**

While discovery was ongoing, the Parties agreed to mediate. On September 21, 2022, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Jed Melnick, Esq. of JAMS ADR. In advance of that session, the Parties exchanged detailed mediation statements, which addressed the issues of both liability and damages. The session ended without any agreement being reached.

Over the course of the next several days, Mr. Melnick conducted further discussions with the Parties, which culminated in a mediator's recommendation to resolve the Action for $5 million in cash for the benefit of the Settlement Class. The Parties accepted Mr. Melnick's recommendation on September 23, 2022.

## IV.  THE SETTLEMENT

### a.  The Settlement Terms

The Settlement requires Defendants to cause to be paid $5 million in cash into an interest-bearing Escrow Account for the benefit of the Settlement Class.  The Net Settlement Fund is defined as the Settlement Amount, plus accrued interest, less: (i) Taxes; (ii) Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.  The Net Settlement Fund will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants") in accordance with the proposed Plan of Allocation.  If the Settlement is approved by the Court, the amounts paid are non-reversionary.

### b.  The Plan Of Allocation

The proposed Plan of Allocation is comparable to plans of allocation approved in numerous other securities class actions.  The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms on a *pro rata* basis based on the amount of each Authorized Claimant's Recognized Claim.[4]  The formula for determining each Authorized Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the federal securities laws as opposed to losses caused by market, industry, or other factors unrelated to the allegations.  The formula also takes into consideration when each Authorized Claimant purchased and/or sold Atlas Securities and requires that Atlas Securities be held over at least one of the alleged corrective disclosures in order for an Authorized Claimant to have a Recognized Claim.

## V.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires court approval for any settlement of a class action, and courts within this circuit recognize that public policy strongly favors settlements, especially in complex class

---

[4] Atlas Call and Put Option trading accounted for less than 1.0% of total dollar trading volume for Atlas Securities during the Settlement Class Period.  As such, claims for Atlas Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation.  *See* Stipulation, Ex. A-1 (Notice) at ¶ 60, n. 8.

actions. *See, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "District court review of a class action settlement proposal is a two-step process." *Armstrong v. Bd. of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *Id.* "If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing." *Id.* "Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard." *Id.*

Fed. R. Civ. P. 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." With respect to Rule 23(e)(2)—which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)     have the class representatives and class counsel adequately represented the class;

(B)     was the proposal negotiated at arm's-length;

(C)     is the relief provided for the class adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement"

(*i.e.*, "[t]he relief that the settlement is expect to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 918); *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Seventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *see also Isby*, 75 F.3d at 1199.

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 918).

### a. Plaintiffs And Their Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires a court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiffs and their counsel adequately represented the Settlement Class.

First, Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the interests of other Settlement Class Members. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum amount of recovery); *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Additionally, Plaintiffs significantly contributed to the Action by overseeing the litigation, communicating regularly with counsel, producing documents to their attorneys, and participating in settlement discussions with Lead Counsel.

Second, Plaintiffs retained counsel that are highly experienced in securities litigation, and have a long successful track record of representing investors in such cases. *See* ECF No. 18-5 (Glancy Prongay & Murray LLP firm resume); ECF No. 18-6 (Lawrence Kamin, LLC firm resume). As described in detail above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Sec. III.b., *supra*) (detailing counsel's extensive investigation into the Company, substantial briefing on multiple motions to dismiss, discovery efforts, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### b. The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel

Fed. R. Civ. P. 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." As discussed above, the Settlement was negotiated by counsel with extensive experience in securities litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of an experienced mediator who ultimately made a

mediator's recommendation that the Parties accepted. *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1, *2 (N.D. Ill. Mar. 6, 2015) (preliminarily approving settlement and finding that settlement agreement was the "result of extensive, arms'-length negotiations by [well-versed] counsel[,]" with the assistance of an experienced mediator, "reinforc[ing] the non-collusive nature of the settlement"); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

### c.   <u>The Relief Provided For The Settlement Class Is Adequate</u>

Under Fed. R. Civ. P. 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.

### i.   <u>The Settlement Amount</u>

The $5 million all cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed at both summary judgment and after a jury trial, and if the Court and jury fully accepted Plaintiffs' damages theory, including proof of loss causation—*i.e.*, Plaintiffs' ***best-case scenario***—the total ***maximum*** damages would be approximately $65.9 million for purchasers of Atlas Common Stock. Thus, the $5 million Settlement Amount represents approximately 7.6% of the total ***maximum*** damages ***potentially*** available to Atlas shareholders in this Action. A recovery of 7.6% is well above the 1.8% median recovery in securities class actions settled in 2021, and significantly higher than the 4.2% median recovery in securities cases with similar damages that settled between December 2012-December 2021.[5]

---

[5] *See* Wolke Decl., Ex. 2 (excerpt from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 24 (Fig. 22)) (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages); *see also id.* at p. 23 (Fig. 21) (median recovery was 4.2% for securities class actions with estimated damages between $50-$99

This was, however, Plaintiffs' best-case scenario. Defendants had raised a number of credible arguments concerning, among other things, liability, loss causation and damages that if accepted would have substantially reduced, or completely eliminated, recoverable damages. For example, Defendants argued and would have continued to argue that based on the opinions of Atlas's independent actuaries and predictive analytics, they reasonably believed that Atlas's reserves were appropriate when set throughout the Settlement Class Period, and that as a result, there was no basis to allege that they had any intent to commit, or that they had committed, securities fraud, contrary to Plaintiffs' allegations. If Defendants had prevailed on this issue, damages would have been eliminated.

Moreover, Defendants also argued or would have argued, *inter alia*, that: (i) the drop in Atlas's stock price following the alleged disclosures on March 1, 2018 and March 4, 2019, could be attributed to other confounding information unrelated to the reserve increases, including that Atlas expected to report a net loss for fiscal years 2017 and 2018, respectively, and; (ii) June 15, 2018 was not a valid disclosure date because the information that led to the A.M. Best ratings downgrade on that day was already in the public domain. While Plaintiffs were confident they would be able to overcome these loss causation/damages arguments, success was not guaranteed and a loss would have had significant negative consequences. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

In light of the aforementioned risks, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval. *See Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

---

million that settled between December 2012-December 2021).

### ii.  The Cost, Risk, And Delay of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery."  *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 585-86 (N.D. Ill. 2011).

Here, there is no question that continued litigation would have been costly, risky, and protracted.  Indeed, even though Plaintiffs had surmounted the PSLRA's heightened pleading standard and automatic stay of discovery, major hurdles—such as class certification, summary judgment, trial, and the inevitable appeals remained.  Success was not, of course, a foregone conclusion.  For example, although Plaintiffs believed a motion for class certification would have been meritorious, Defendants would have most likely opposed the motion.  Failure to obtain class certification would have eliminated any potential benefit to the Settlement Class.  Even assuming class certification was achieved, the Court could have revisited certification at any time— presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

Moreover, even if Plaintiffs prevailed at the class certification stage, they would still have to *prove* their claims.  Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature, expensive, risky, and uncertain. *See, e.g.*, *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) ("Defendants are highly motivated to defend these cases vigorously…. [C]ontinued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time."); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th

Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 based on 1994 Supreme Court opinion).

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeals, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $5 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all the risk, delay, and expense of continued litigation.

### iii. <u>Other Factors Established By Rule 23(e)(2)(C) Support Preliminary Approval</u>

Under Rule 23(e)(2)(C), courts also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval of the Settlement or is neutral and thus does not suggest any basis to conclude the Settlement is inadequate.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Epiq Class Action & Claims Solutions, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under Lead Counsel's guidance, allow claimants an

opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

**Second**, as disclosed in the Notice, Lead Counsel, on behalf of Plaintiffs' Counsel, will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. Proposed attorneys' fees of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) are reasonable in light of the work performed and the results obtained. *See, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶ 16.

**Third**, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement pursuant to which Atlas may terminate the Settlement if Settlement Class Members having Recognized Claims that equal or exceed a certain percentage of the Settlement Class's total Recognized Claims under the Plan of Allocation exclude themselves from the Settlement Class in accordance with the requirements for requesting exclusion provided in the Notice. This type of agreement is standard in securities class action settlements and has no negative impact on the

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation, ¶ 13.

fairness of the Settlement. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### d. All Settlement Class Members Are Treated Equitably

The Settlement does not provide preferential treatment to Plaintiffs or any other segment of the Settlement Class.[7]  The proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.  *See* Stipulation, Ex. A-1 (Notice) at ¶¶ 52-76.  Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Settlement Class Member's purchases and/or sales of Atlas Securities during the Settlement Class Period for which adequate documentation is provided.  *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Atlas Securities were purchased or sold, the type of Atlas Securities purchased or sold, the purchase and sale price of the Atlas Securities, and the estimated artificial inflation (or deflation in the case of put options) in the respective prices of the Atlas Securities at the time of purchase and at the time of sale as determined by Plaintiffs' damages expert.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the type of security (*i.e.*, common stock or option) and the relative size of their Recognized Loss(es).  Similar plans have repeatedly been approved by courts in this circuit.[8]  *See, e.g.*, *Great Neck Capital*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Accretive*, 773 F.3d at 865

---

[7] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class.  *See* 15 U.S.C. § 78u-4(a)(4).

[8] *See supra*, n. 4 (explaining limitation on recovery for Atlas Call and Put Options).

(examining and affirming similar plan of allocation); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016) (approving similar plan of allocation).

        **e.**   **The Remaining Factors Are Satisfied**

              **i.**   **The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved Supports Preliminary Approval**

The relevant inquiry under this factor is whether a plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Here, Plaintiffs and Lead Counsel obtained sufficient information about the facts underlying the claims to evaluate the proposed Settlement, by, among other things:

- Conducting a thorough investigation of the claims asserted in the Action, which included: (a) an in-depth review and analysis of (i) Atlas's SEC filings, press releases, investor conference calls, and other public statements; (ii) publicly available documents, announcements, and news articles concerning Atlas; and (iii) research reports prepared by securities and financial analysts regarding Atlas; (b) interviews with former employees and other potential witnesses with relevant information; and (c) consultations with accounting, loss causation and damages experts;

- Drafting four comprehensive and detailed complaints based on this extensive investigation and legal research into the applicable claims;

- Researching and preparing extensive briefing in response to Defendants' motions to dismiss, and successfully defeating one of those motions;

- Engaging in discovery by, *inter alia*, researching and drafting initial disclosures, propounding discovery requests, negotiating an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents in the Action, and targeted review and analysis of more than 320,000 pages of documents produced by Defendants; and

- Drafting a mediation brief, containing detailed analyses of the strengths, risks, and potential issues in the litigation and participating in a full-day mediation session overseen by an experienced neutral.

Thus, at the time the Settlement was reached, Plaintiffs and their counsel possessed information sufficient to intelligently assess the strengths and weaknesses of the case and evaluate the merits of the Settlement.

### ii. __Recommendations Of Experienced Counsel__

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir.1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Accretive*, 773 F.3d at 864 (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement). Consequently, Lead Counsel's belief in the fairness and reasonableness of the Settlement supports preliminary approval.

## VI. __THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS__

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rule 23. Such is the case here.

__Numerosity:__ "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004); *see also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at *3 (N.D. Ind. May 21, 2020) ("[N]umerosity is practically a foregone conclusion in a large securities class action like this."). Here, approximately 6.8 million shares of Atlas Common Stock were traded during the Settlement Class Period. Thus, the Settlement Class is so large that joinder of class members is impracticable.

__Common Questions:__ Securities fraud cases like this one easily meet the commonality requirement. This requirement is satisfied by showing "a common nucleus of operative fact," which is found where "the defendants have engaged in standardized conduct towards members of the proposed class[.]" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quotations and citation omitted). Here, there are numerous common questions of law and fact relating to Plaintiffs' Exchange Act claims, including whether: (1) Defendants' representations to the investing public during the Settlement Class Period were materially misleading; (2) Defendants acted with scienter; and (3) the price of Atlas Securities was artificially inflated by Defendants' conduct. These questions are susceptible to common answers because their resolution does not differ based on the

plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *See Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006).

**Typicality:** Typicality is established where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 598 (N.D. Ill. 2009) (quotations and citation omitted). Plaintiffs' claims are typical of the Settlement Class because their claims are based on the alleged misrepresentations and omissions. Thus, any Settlement Class Member's claim arising from these alleged misrepresentations and omissions will necessarily rely on the same course of events.

**Adequacy:** As explained in Sec. V.a., *supra*, Plaintiffs and Lead Counsel are adequate representatives. First, Plaintiffs and Settlement Class Members purchased Atlas Securities during the Settlement Class Period, and they were all injured by Defendants' allegedly materially false statements and omissions. Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Plaintiffs have demonstrated their commitment to this litigation and retained qualified counsel that federal and state courts throughout the country have routinely found to be adequate. *See, e.g., Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding that "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits.").

**Common Questions Predominate:** Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). Here, to establish liability, Plaintiffs and the Settlement Class would need to prove,

*inter alia*, that Defendants made materially false and/or misleading statements or omissions with the requisite state of mind. The evidence needed to prove these claims will be the same for all Settlement Class Members, a fact that strongly favors a finding of predominance. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013). Moreover, affirmative defenses are also subject to general proof, including causation-based defenses. *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 274 (3d Cir. 2005) ("[D]efendants can limit damages by showing that the plaintiffs' losses were caused by something other than their misrepresentations."). These questions, among others, are identical for each Settlement Class member, as is the evidence necessary to answer them. Accordingly, the predominance requirement is met.

**Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation. "[C]lass actions are often the most fair and practical vehicle for plaintiffs' claims in securities fraud suits because those who have been injured are in a poor position to seek legal redress ... [B]ecause individual claims might be small in monetary value, they might not be prosecuted on an individual basis due to the costs of litigation." *Roth*, 238 F.R.D. at 608.

Here, there is no evidence that putative class members desire to bring separate individual actions. Plaintiffs are unaware of any other actions asserting claims arising from the same set of factual allegations as those asserted in the Complaint. Furthermore, in securities actions such as this, "'[j]udicial economy and efficiency' will be promoted by certifying th[e] class, and resolving these matters in one suit." *See Roth*, 238 F.R.D. at 608. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## VII. THE PROPOSED NOTICE SHOULD BE APPROVED

### a. The Method Of Notice Is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to all

members of the class in such manner as the court directs. Here, as outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Stipulation, together the "Notice Packet") to all Settlement Class Members who can be identified with reasonable effort, including through records maintained by Atlas, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities. Contemporaneously with the mailing of the Notice Packet, downloadable copies of the Notice and the Claim Form will be posted on a website developed for the Settlement.[9] The Settlement Website will also allow online claim submission. No more than ten (10) business days after mailing the Notice Packet, the Summary Notice will also be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*. *See* Stipulation, Ex. A (Preliminary Approval Order) at ¶ 8(d).

Courts routinely find that these methods of notice are sufficient. *See, e.g.*, *In re Northfield Labs.*, 2012 WL 366852 (approving similar method of notice). Thus, Plaintiffs respectfully submit that the proposed notice program provides "the best notice practicable under the circumstances" and should be approved. *See In re Enron Corp. Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003).

**b.** **The Content Of The Notice Is Adequate**

As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or the request for attorneys' fees and Litigation Expenses. *See In re Mexico Money*, 164 F. Supp. 2d at 1032-33 ("The purpose of class notice … is to advise [settlement class members] of the terms of the agreement which has been reached and provide those who disapprove of those terms an opportunity to object or to opt out.").

The proposed notice program satisfies the requirements of Rule 23(c)(2) by setting forth:

---

[9] www. AtlasFinancialSecuritiesSettlement.com (the "Settlement Website").

(1) the nature of the action; (2) the Settlement Class definition; (3) a description of the claims and defenses; (4) the ability of Settlement Class Members to enter an appearance through counsel; (5) the Settlement Class Member's ability to be excluded from the Settlement Class; and (6) the binding effect of a Class judgment.  Additionally, the notice program satisfies the requirements in the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth: (1) a cover page summarizing the information in the Notice; (2) a statement of plaintiff recovery, and the estimated recovery per damaged share; (3) a statement of potential outcomes of the case; (4) a statement of attorneys' fees or costs sought; (5) an identification of lawyers' representatives; and (6) the reasons for settlement. Finally, the notice program will provide information about the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement and other relief to be requested by Plaintiffs and Lead Counsel.  Nothing more is required.  *See Zimmer Biomet*, 2020 WL 2570050, at *5 (approving virtually identical notice program).

## VIII.  **PROPOSED SETTLEMENT SCHEDULE**

The Parties respectfully propose the following schedule for the Court's consideration:

| | |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement Website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 120 calendar days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days from the Notice Date |

## IX.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the accompanying Preliminary Approval Order.

Dated: December 2, 2022                         Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Kara M. Wolke*
Kevin F. Ruf
Kara M. Wolke
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com
        kwolke@glancylaw.com
        npang@glancylaw.com

*Lead Counsel for Lead Plaintiffs*

**LAWRENCE KAMIN, LLC**
John S. Monical
Peter E. Cooper
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Telephone: (312) 372-1947
Facsimile: (312) 372-2389
Email: jmonical@lawrencekaminlaw.com
        pcooper@lawrencekaminlaw.com

*Liaison Counsel for Lead Plaintiffs*

## PROOF OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.  On, December 2, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Illinois, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 2, 2022, at Los Angeles, California.


*s/ Kara M. Wolke*
Kara M. Wolke